# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
### CASE NO: 5:18 CV 160

**JAMES STUART FALLER, II**

*stamp*
*mazzone*
*Blalock*

FILED

SEP 21 2018

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

*Plaintiff*

V.

**UNITED STATES BUREAU OF PRISONS,**

And

**UNITED STATES DEPARTMENT OF JUSTICE,**

And

**JENNIFER SAAD,** IN HER OFFICIAL CAPACITY AS WARDEN OF FEDERAL PRISON CAMP, GILMER WEST VIRGINIA,

And

**JOHN MORAN,** INDIVIDUALLY and IN HIS OFFICIAL CAPACITY,

And

**JOSEPH LEE YEAGER,** INDIVIDUALLY and IN HIS OFFICIAL CAPACITY,

And

**RANDALL D. LOUK,** (First name unknown, is a case manager as Camp Gilmer),

And

**GREGG R. FEARDAY,** (Phonetic) (In his official capacity at the Bureau of Prisons.)

**UNKNOWN FEDERAL EMPLOYEES/AGENTS AND DIRECT CONTRACTORS,**

*Defendant(s)*

## I.   PARTIES

**PLAINTIFF:**

**James Stuart Faller, II** ("Faller")
C/o Dismas Charities
124 W. Oak Street
Louisville, Kentucky 40203
(706) 505-7732
jamesfaller@yahoo.com

**DEFENNDANTS:**

### 1.  United States Bureau of Prisons ("BOP")

Federal Bureau of Prisons
320 First St., NW
Washington, DC 20534
(202) 307-3198

### 2.  United States Department of Justice ("DOJ")

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
(202) 514-2000

### 3.  Jennifer Saad, as Warden of Gilmer-FCI ("Saad")

Gilmer FCI
201 FCI Lane
Glenville, West Virginia 26351
(304) 626-2500

### 4.  John Moran, Individually and in his official capacity ("Moran")

Gilmer FCI
201 FCI Lane
Glenville, West Virginia 26351
(304) 626-2500

### 5.  Joseph Lee Yeager, Individually and in his official capacity ("Yeager")

Gilmer FCI
201 FCI Lane
Glenville, West Virginia 26351
(304) 626-2500

6.  **Randall D. Louk,** Individually and in his official capacity **("Louk")**

Gilmer FCI
201 FCI Lane
Glenville, West Virginia 26351
(304) 626-2500

7.  **Gregg R. Fearday,** In his official capacity **("Fearday")**

Federal Bureau of Prisons
320 First St., NW
Washington, DC 20534
(202) 307-3198

8.  **Unknown Federal Employees/Agents and Direct Contractors ("FEADC")**

## II.    JURISDICTION

This action arises as a result of various tort claims, violations of Federal Civil Rights laws and the United States Constitution. Faller, the Plaintiff, asserts that the instant Complaint is being brought Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.

1.  Faller is a citizen of Kentucky and the acts complained of are ongoing in cause and effect, taking place in multiple states (West Virginia, Arkansas and Kentucky.)

2.  Faller hereby asserts and calls upon the supplemental jurisdiction of this court to enforce the laws and available remedies of the States were these acts, complained of, took place. (West Virginia, Arkansas and Kentucky.)

3. The acts complained of are in violation of the Eighth Amendment of the Constitution of the United States of America and the States of West Virginia, Arkansas and Kentucky.

4. The acts complained of are also in violation of 42 USC § 1983 as it pertains to certain acts.

5. This action is also being brought as a complaint for violations under the authority of Bivens v. Six Unknown Federal Agents[1].

6. This action includes claims brought under the Federal Tort Claims act.[2]

7. This action includes acts prohibited and actionable under the state statutes of each of the listed states, for which Faller asserts these any and all claims actionable under the supplemental jurisdiction of this Court[3].

---

[1] Bivens v. Six Unknown Named Agents 456 F.2d 1339 (1972), Bivens actions also refer to actions for damages when there has been a violation of the U.S. Constitution by federal officers acting in the color of federal authority.

[2] The **Federal Tort Claims Act** (August 2, 1946, ch.646, Title IV, 60 Stat. 812, "28 U.S.C. Pt.VI Ch.171" and 28 U.S.C. § 1346(b)) ("**FTCA**") is a 1946 **federal** statute that permits private parties to sue the United States in a **federal** court for most **torts** committed by persons acting on behalf of the United States.

[3] 28 U.S. Code § 1367 - Supplemental jurisdiction:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) The claim raises a novel or complex issue of State law,

(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) The district court has dismissed all claims over which it has original jurisdiction, or

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

## III.    STATEMENT OF CLAIM

FALLER was the grade "A" maintenance inmate at Gilmer WV FCI. FALLER was **ordered** under threat, adverse to his objection, to mow the grass on a hill that is approximately 1000 feet high and is **now** known to be more than 30% in slope.  The work was attempted on a Kubota 2620, 4-wheel drive tractor with a belly mower attached.

On September 22nd, 2016, [t]he tractor rolled over forward with FALLER operating it, after the tractor broke loose and could not be slowed or stopped. [It] rolled 360° and came to a stop on its wheels. There were some 20+ witnesses, including the warden and medical staff standing at the bottom of the hill when the incident took place.

FALLER was taken to the waiting room of the main administration building and the medical staff examined FALLER. FALLER was advised there were no outward signs of injury however, it was highly likely symptoms would appear.

Within a few days FALLER began to experience substantial issues, including headaches, pain in his knees, FALLER'S stomach and dental issues began becoming painful in his rear teeth.

The medical staff (Nurse Practitioner Alicia Wilson and Nurse Rebecca Grove) tried to get FALLER help. None was given and FALLER kept being informed that *"it was being reviewed for approval."* Wilson was finally able to get a doctor who just began working at the prison to agree to go around the administration and get surgery for FALLER.

On May 30th, 2017, after more than (8) eight months of the incident, FALLER was taken to a local hospital where FALLER was operated on for a "hernia." The surgery was conducted as orthoscopic surgery.  Mesh was installed and FALLER was released to go back to the prison to recover. FALLER never saw the doctor again, after the surgery.

On or about June 15th, 2017 the surgery had clearly failed. FALLER notified the medical staff and was seen again by Dr. Anderson, the regular camp physician. FALLER was told it was FALLER'S imagination. Nurse practitioner Wilson then took steps to try and get FALLER help, without the knowledge of the prison doctor.

On or about June 20th, 2017, FALLER was called into the inmate case manager's office, Mr. Louk. FALLER was presented with a document Louk was demanding that FALLER sign. FALLER refused.

On July 6th, 2017, FALLER was called to the inmate visiting room and arrested by the camp secretary, Joe Yeager on knowingly bogus allegations. Yeager handcuffed me, not having a clue what he was doing and took me to the Special Housing Unit ("SHU") where FALLER was held for (71) seventy one days.

During the arrest, Yeager placed handcuffs on FALLER backwards, causing damage to FALLER'S left hand. FALLER immediately informed him that his hand was in severe pain. Yeager stated *"he did not have keys to the handcuffs and I'd just have to deal with it."* Approximately (45) forty five minutes later, [t]he handcuffs were removed with damage to FALLER'S left hand causing, untreated, partial loss of use and loss of feeling.

While FALLER was held in the SHU, FALLER was denied any and all medical care or even medication (aspirin, pain killers, etc.,) for these (71) seventy-one days. FALLER was advised at approximately (45) forty-five days by the SIS police (Lt. Mullins) in the prison that the allegations were known to be false and that he was ordering me to be transferred for my safety, from the staff making more false allegations.

At (71) seventy one days Mr. Louk placed a *"management variable"* on FALLER and caused FALLER to be placed in a higher level of custody for the duration of FALLER'S sentence.

FALLER was transferred to Forrest City Arkansas to the LOW security prison.

Upon FALLER'S arrival at Forrest City, Arkansas, a counselor realized FALLER'S serious condition and caused medical staff to intervene. This included immediate bunk reassignment and an immediate review by medical staff.

FALLER was sent to specialists (Heart, Urologist) in Memphis, Tennessee, all who explained the serious nature of FALLER'S condition.

On October 31st, 2017, FALLER doubled over in the unit where FALLER was housed and the Counselor called for emergency intervention. The duty nurse (Mr. Wooten) examined FALLER and called for help from the prison nurse practitioner. They (Wooten and the practitioner) ordered me to be immediately taken to the hospital. FALLER was taken to the local hospital where it was discovered that an additional symptom FALLER was suffering from the accident, was diverticulitis. FALLER was treated in the emergency room and released with the recommendations to get surgery immediately.

FALLER saw the Forrest City prison physician sometime after FALLER returned. Again, FALLER was given mass amounts of various, completely unnecessary medications, some that would cause FALLER further harm. FALLER consulted other doctors and the nurse at the prison who made FALLER aware that FALLER was correct and that *"they do that all the time."*

Several months later, FALLER was seen by a surgeon/doctor in the prison who came from the local town. The surgeon examined FALLER at the same time as approximately (50) fifty other inmates for various surgical needs.

The surgeon stated FALLER had a significant hernia and needed surgery. The surgeon acknowledged that the previous surgery had failed.

The surgeon explained to FALLER that he (the surgeon) was *"likely"* going to conduct an *"Orchiectomy[4]"* on FALLER and it would cure the issues. No explanation was given as to the definition of an Orchiectomy.

FALLER spoke with several inmates who are doctors. The doctors explained that this procedure was highly unusual for such a problem and that [it] involved removal of FALLER'S testicles.

FALLER approached the nurse in the Forrest City prison who made it clear FALLER was well served to avoid any medical treatment at the prison. At this point, approximately March of 2018, FALLER signed documents that FALLER would not let the prison provide medical treatment unless it was from qualified practitioners and proper treatment. In many instances, FALLER had to completely refuse treatment for fear of his safety.

FALLER was approached by a Lieutenant who informed FALLER that he had gone to extra lengths to get FALLER seen by a specialist in Memphis Tennessee. FALLER agreed and was taken to a specialist for my prostate in Memphis and to evaluate FALLER'S condition. The specialist was clear, the idea of an orchiectomy was foolish and unnecessary. His [r]ecommendation was to get surgery as soon as FALLER got out.

FALLER was released on June 27th, 2018 to a half-way house in Louisville, Kentucky.

Upon arrival, FALLER was accused by the BOP representative, Gregg Fearday, of lying and that there were no medical issues with FALLER.

After a lengthy discussion, Mr. Fearday made remarks that could have been taken as threatening or intimidation concerning sending FALLER back to prison.

---

[4] or·chi·ec·to·my ˌôrkēˈektəmē/

*noun*
Surgical removal of one or both testicles.

FALLER was seen at Park Duvall Medical Center on August 1st, 2018 for a screening. The practitioner observed damaged knees, damage to FALLER'S hand, and the need for a surgeon regarding the stomach injuries.    FALLER was referred to a surgeon as soon as possible.

FALLER was finally allowed to go to a qualified Surgeon, Dr. Greg Strothman on August 14th of 2018. Dr. Strothman scheduled surgery for August 23rd, 2018.

On or about August 20th, 2018, FALLER was contacted by the hospital and notified that the BOP, Mr. Fearday had cancelled FALLER'S surgery and refused payment or approval.

FALLER was refused approval by Fearday at the BOP to obtain surgery, even on his own.

FALLER was notified by the halfway house social worker Morgan Wells that, FALLER was not getting surgery because Mr. Fearday notified Wells that they had someone die under anesthesia.

FALLER applied for Medicaid under the State of Kentucky and was given insurance.

On his own, FALLER contacted Dr. Strothman's office and scheduled surgery on September 13th, 2018, paid for by the state insurance.

FALLER was notified by halfway house Social worker, Morgan Wells of the halfway house that FALLER was not approved to get surgery and she could not approve FALLER'S movement request.

Ms. Wells went to extensive efforts to compel Mr. Fearday to approve FALLER'S surgery, especially given the state was now paying for the procedure.

On September 12th, 2018, FALLER was seen by Park Duvall for a second time because FALLER was declining in ability to walk without extreme pain from the stomach and knee injuries. The practitioner was concerned about the delay and proceeded to treat FALLE'S knees with anti-inflammatory medicines.

On September 13th, 2018, almost (2) two years from the accident, FALLER was finally provided competent medical care and was operated on by Dr. Greg Strothman at Norton Hospital in Louisville, Kentucky. FALLER is now slowly recovering from his stomach injures. No orchiectomy was necessary or even considered by Strothman. The surgery appears to be producing the correct result. FALLER has been advised there were additional damages however, due to statute of limitations, FALLER is required to file the instant complaint before my treatment is complete. I will update this information as it becomes available.

As of the date of this document, FALLER has never been properly treated or evaluated for his head injury, his hand or his teeth. FALLER has requested that these injuries are treated, many times.

FALLER has provided all available medical records through his tort claim. There will be more from Dr. Strothman and Park Duvall. FALLER will be glad to provide a waiver for access to the files and or supplement the record upon obtaining those records.

1. At all times relevant, ALL DEFENDANTS acted with reckless disregard and deliberate indifference for the safety of Faller who was an involuntary inmate, forcibly secured in their care and custody.

2. At all times relevant, ALL DEFENDANTS acted with deliberate indifference to the constitutionally guaranteed medical care that FALLER was entitled to.

3. At all times relevant, defendants BOP, DOJ and SAAD were deliberately indifferent and reckless and did not provide proper training to the remaining defendants, in violation of FALLER'S constitutional rights.

4. At all times relevant, DEFEDANTS BOP, DOJ and SAAD were recklessly negligent and deliberately indifferent in providing proper supervision and oversight of the remaining defendants, in violation of FALLER'S constitutional rights.

5. At all times, relevant DEFENDANTS MORAN, YEAGER and LOUK acted with intentional malice in concocted and manufactured facts designed to harm FALLER to silence him, I violation of FALLER'S constitutional rights.

6. At all times relevant, DEFENDANTS MORAN, YEAGER and LOUK acted with reckless and intentional disregard and indifference to FALLER'S safety.

7. At all times relevant, DEFENDANTS MORAN, YEAGER and LOUK did in fact combine, conspire and confederate to violate the constitutional rights of FALLER, in violation of United States Code 42 USC § 1985.

8. At all times relevant, Defendant FEARDAY acted with reckless disregard and complete indifference to FALLER'S medical needs and his constitutionally protected rights to competent medical care in a timely manner, including deliberate indifference to the pain and suffering endured by FALLER for almost (2) two years.

9. At all times relevant, Defendants FEADC did not provide FALLER with adequate and or competent care that is constitutionally guaranteed. These acts were with reckless disregard and deliberately indifferent to the Constitutional safeguards of FALLER.

10. Defendants DOJ and BOP recklessly were deliberately indifferent in allowing the other defendants to engage in a continual and ongoing pattern of conduct that is dangerous and harmful to the Plaintiff and others.

11. Defendants DOJ and BOP failed to properly train and supervise the additional defendants named in this action and complaint.

## IV.    RELIEF SOUGHT

1.  Faller demands a trial by jury.

2.  Faller demands immediate and temporary injunctive relief that Defendant FEARDAY shall be ORDERED to immediately approve any and all reasonable dental and medical requests.

3.  Faller demands a judgment in his favor in an amount necessary to pay all current and future medical costs and expenses from the direct and resulting injuries caused to Faller.

4.  Faller demands a judgement in the amount of $1,000,000.00, jointly and severally from each defendant for punitive damages.

5.  Faller demands a judgment in the amount of $5,000,000.00 from each of the defendants, jointly and severally for the intentional infliction of emotional distress.

6.  Faller demands a judgement in the amount of $5,000,000.00 from each of the defendants, jointly and severally for pain and suffering.

7.  Faller demands a judgment in the amount of $5,000,000.00 from each of the defendants, jointly and severally as punitive damages.

8.  Faller demands a judgment in the amount of $1,000,000.00 for loss of wages from each of the defendants as partial, actual compensatory damages.

9.  Faller demands an award of interest at the prevailing rate, both pre and post judgment for any unpaid amounts from the time of the incident, 9/22/2016.

## V.    Certification and Closing Under Federal Rule of Civil Procedure 11

By signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) Is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law;

(3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) The complaint otherwise complies with the requirements of Rule 11.

James Stuart Faller, II, Plaintiff
C/o Dismas Charities
124 W. Oak Street
Louisville, Kentucky 40203
(706) 505-7732
jamesfaller@yahoo.com